UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICIA A. ANDWAN,  
    Plaintiff,

    v.

VILLAGE OF GREENHILLS, et al.,

    Defendants.

Case No. 1:13-cv-624

Barrett, J.
Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

More than three years ago, Plaintiff Patricia Andwan, through experienced counsel, paid the requisite filing fee and initiated this civil rights suit.[1] Counsel subsequently withdrew, and with the notable exception of representation by a second attorney for a four-month period in 2015, Plaintiff has prosecuted her claims *pro se* since then. Pursuant to local practice, all pending motions have been referred to the undersigned magistrate judge.

Currently pending before the undersigned is a motion labeled as a "second motion for reconsideration" of a prior order by then-presiding Senior District Judge Beckwith,[2] which order (Doc. 187) overruled Plaintiff's objections to a prior order of the undersigned. (Doc. 190). The original order (and Judge Beckwith's subsequent order) both denied Plaintiff's motion seeking the appointment of counsel, as well as Plaintiff's motion to stay proceedings. Plaintiff's latest motion for reconsideration of all prior related orders (Doc. 193) also will be denied.

---

[1]Plaintiff has never proceeded *in forma pauperis* in this litigation.  
[2]This case was recently reassigned to U.S.District Judge Michael R. Barrett.

1

**II. Background**

To provide better context for the Court's denial of Plaintiff's latest motion for the appointment of counsel (or second motion for reconsideration of prior orders denying counsel and for a stay of proceedings), the undersigned has attempted to summarize relevant background concerning Plaintiff's prior retention of counsel over the three year, four month history of this case, as well as relevant facts pertaining to her representation without counsel.

When counsel first filed this case on Plaintiff's behalf on September 9, 2013, the Court entered a calendar that included a trial date of December 8, 2014. (Docs. 11, 12). That date was vacated after, based upon a "severe and fundamental disagreement as to how this case should be litigated," the team of three attorneys originally retained by Plaintiff were permitted to withdraw on February 18, 2014. (Doc. 16). The affidavit of one of Plaintiff's attorneys explained that he had communicated with Plaintiff "in person, via telephone, and by email dozens of times concerning the complaint, witness lists, and particular items of discovery," but that it had become apparent "Plaintiff has irreconcilable differences of opinion with her counsel as to how this case should proceed" despite "numerous attempts to resolve these differences." (Doc. 14-1).

The Court stayed proceedings to allow Plaintiff time to retain new counsel, but she was unable to do so despite stating that she had contacted and been rejected by more than thirty attorneys. Therefore, the Court advised that – to the extent she desired to continue to prosecute her case - she must proceed *pro se,* denying Plaintiff's additional requests for lengthy stays. (*See* Doc. 21, holding that "[t]he Court will not

2

give Plaintiff another four months" to retain counsel, but would instead continue the existing stay only until April 30, 2014).

On April 14, 2014, Plaintiff was granted leave to file motions and other documents electronically. (Doc. 24). From that date through today, Plaintiff has successfully filed (*pro se*) more than sixty documents in the record.

Among those documents were several motions that, while not directly seeking the appointment of counsel, complained that this Court had an obligation "to assure Plaintiff is represented by counsel at all times" (Doc. 45 at 1), and that the Court "disregarded Plaintiff's interests in being represented by counsel" in permitting Plaintiff's original attorneys to withdraw. Plaintiff also requested "mediation" between her former lawyers and herself. Judge Beckwith overruled those objections, explaining that no rule required the appointment of counsel for Plaintiff. (*See* Doc. 59, Order of 7/16/14 at 4). Plaintiff paid a $505 filing fee in order to pursue an interlocutory appeal, which the Sixth Circuit denied and dismissed on September 25, 2014. (Doc. 66).

The case continued to proceed, with the undersigned ruling on multiple motions referred to her, and with Plaintiff frequently filing objections. In those objections, Plaintiff continued to challenge the Court's order permitting her original attorneys to withdraw – challenges that Judge Beckwith continued to reject. (Doc. 93, Order of 12/24/14 at 3). In one order, Judge Beckwith wrote:

> Plaintiff is specifically cautioned that her baseless accusations and flagrant misstatements of fact regarding this Court, its judicial officers and employees, must stop. If she continues with this course of conduct, she will be subject to the imposition of sanctions, which may include the dismissal of her lawsuit. This admonition fully applies to Plaintiff's equally baseless accusations against the Magistrate Judge, whom Plaintiff complains was "politically hired" and is biased against her.

3

> The Court also rejects Plaintiff's suggestion that anything that the Magistrate Judge has done or said has delayed this case due to bias against Plaintiff. Indeed, the record shows that Plaintiff's own actions and decisions regarding her lawsuit have resulted in the delays of which she now complains….

(Doc. 93 at 4).

In January 2015, Plaintiff retained new counsel, who was thereafter granted leave to file an otherwise untimely second amended complaint, based in part upon the agreement of all opposing counsel. (Docs. 103, 157). The Court promptly entered a new scheduling order, permitting new counsel an extension of the prior discovery deadline, and resetting trial for April 18, 2016. (Doc. 105). On April 15, 2015, Judge Beckwith granted partial judgment on the pleadings on Plaintiff's claim for intentional infliction of emotional distress against the Village of Greenhills, and on Plaintiff's assault and battery claims against both the Village and Defendant Andrew Moore. (Doc. 114). Shortly thereafter on May 5, 2015, Plaintiff filed a "notice" that she had terminated her second retained counsel; counsel simultaneously moved to withdraw. (Docs. 119, 120).

Counsel's motion to withdraw stated that he had been "the recipient and respondent to over 400 e-mails from the Plaintiff" over the span of four months, had copied Plaintiff on every communication, but still was informed by Plaintiff that she was terminating him for allegedly failing to fully inform her "on the progress of her case." (Doc. 120 at 1). Counsel expressed his belief that "Plaintiff seeks unrealistic control and command over the lawyer who represents her and that demand has interfered with the undersigned's ability to exercise independent judgment in deciding what litigation course to take in this case, engage in a meditative and deliberative process to prepare this case, and created a very difficult to carry on relationship with a client who insists on

4

being in effect co-counsel without the assent of the undersigned." (Doc. 120 at 2). Judge Beckwith granted the motion to withdraw for the reasons stated in counsel's motion. (Doc. 121). Plaintiff's objections to Judge Beckwith's order were overruled.

Plaintiff filed several motions and documents in which she sought to stay ongoing discovery and continue her case pending receipt of her case file from her second terminated attorney, with additional time to "locate and interview" prospective new counsel. (*See, e.g.*, Docs. 117, 118, 119, 125). Because Plaintiff subsequently acknowledged receipt of her case file, the undersigned cautioned Plaintiff about further delays, reiterating language in prior orders, while granting Plaintiff a short extension for completion of fact discovery to July 30, 2015. (Doc. 127, Order of 6/30/15). Noting that "the progress of this litigation has been painstakingly slow," the Order also reiterated that "[m]ore than a year ago…the undersigned attempted to make clear to Plaintiff that neither her pro se status nor her desire to interview and retain new replacement counsel justifies further extensions or delay," (*Id.* at 6).

On August 3, 2015, the undersigned ruled on a series of motions filed by Plaintiff. That Memorandum Order granted Plaintiff's request for an in-person case management conference, and also granted Plaintiff's request to bring a "companion" to that conference, with the caveat that Plaintiff would not be permitted to "appear" through representation by a non-attorney, and that the companion would not be permitted to interfere with or cause any obstruction to case proceedings but merely could accompany Plaintiff. (Doc. 133).

On August 14, 2015, the undersigned conducted a lengthy preliminary pretrial conference, to which Plaintiff brought her lay companion. The Court's subsequent order

5

reminded Plaintiff (as she had been repeatedly reminded previously) of her obligations to adhere to all applicable civil rules of procedure and trial procedures, as *pro se* litigants are not excused from such obligations. (Doc. 134). The Order ruled on multiple objections raised by Plaintiff to various discovery responses transmitted to her by Defendants. "[A]t least some of what Plaintiff believes are examples of incivility or 'falsified reports' in the documents filed of record have not been inappropriate filings or representations, but in fact reflect no more than relatively common practices of experienced counsel, conveyed in legal parlance that has been misinterpreted by the *pro se* Plaintiff." (Id., PageID 1190-1191). Still, the Order reflects the undersigned's attempt to mediate between defense counsel and Plaintiff and to accommodate as many of Plaintiff's requests as possible, while reiterating that neither this Court nor its employees can provide Plaintiff with legal advice. For example, defense counsel readily agreed to Plaintiff's request that during any deposition of police officers conducted by Plaintiff, they would appear without their service weapons and remove their hats. (*Id.* at n.5, PageID 1191).

On September 28, 2015, Plaintiff filed a motion seeking a 60-day extension based upon her enrollment in a day treatment program at Good Samaritan Hospital through mid-October 2015, for mental health issues. (Doc. 138). The Court granted the extension.

Plaintiff filed additional motions relating to her objections to the Defendants' discovery responses and seeking additional accommodations from this Court, including but not limited to an additional lengthy extension of pretrial deadlines. On December 30, 2015, the undersigned filed a 14-page Memorandum Order that again attempted to

6

address Plaintiff's numerous motions and concerns, despite the fact that several motions were procedurally improper. "[I]n direct contrast to this Court's normal procedures to discuss discovery issues with the Court informally, in an effort to keep this case moving and to make a clear record, the Court will attempt to address the concerns herein." (Doc. 145 at 2, PageID 1398). A number of the Court's rulings in the 12/30/15 Order noted that the same concerns had been discussed (and the same rulings made) at the prior in-person pretrial conference attended by Plaintiff. Ultimately, the undersigned overruled many of Plaintiff's objections to Defendants' discovery responses, while ordering Defendants to produce some additional discovery. The Court also granted Plaintiff's request for further extension of pretrial deadlines, noting it had been "generous" with extensions to date and would "not be inclined to extend these deadlines any further without exceptional good cause being shown." (*Id.* at 11, PageID 1407).

Defendants objected to the undersigned's order compelling additional production of discovery, in part on the merits and in part based upon Plaintiff's failure to comply with civil rules and the trial procedures of this Court. Judge Beckwith overruled all objections, noting the "herculean and extraordinary efforts" undertaken by the undersigned to mediate the discovery dispute between the parties and to "fashion a way forward and …expeditiously resolve the disputes" given the posture of the case and Plaintiff's *pro se* status. (Doc. 156). Judge Beckwith also expressed concern with the lengthy delays in the case, and reiterated prior warnings to Plaintiff that her *pro se* status "does not exempt her from diligently prosecuting her case and complying with the rules of law and of this Court." (*Id.* at 5, PageID 1701). Judge Beckwith stated that she

was not inclined to further extend discovery deadlines "absent the most extraordinary circumstances." (*Id.* at PageID 1702).

On April 7, 2016, the undersigned denied a motion by Plaintiff to reinstate an earlier *pro se* version of her amended complaint, as well as a motion seeking another in person conference. (Doc. 157). The Order noted that the Court had made the same ruling (denying Plaintiff's attempts to reinstate the prior amended complaint) on prior occasions, and reiterated the Court's significant concern with the pace of the litigation. The Court also reiterated prior express warnings made by both the undersigned and the presiding district judge against seeking extensions of the remaining pretrial deadlines. In denying Plaintiff's request for an additional discovery-related conference, the undersigned noted that Judge Beckwith had already set a pretrial conference for May 16, 2016. (*Id.*) Judge Beckwith denied Plaintiff's objections and motion to stay the April 7, 2016 Order of the undersigned, finding that most of Plaintiff's objections "simply repeat contentions she has raised in prior motions…." (Doc. 162 at 2; *see also* Doc. 161).

Following the May 16, 2016 pretrial conference, Judge Beckwith set aside pretrial deadlines pending further review and a follow-up case conference scheduled for June 1, 2016. (Doc. 165). At the June 1 conference, Judge Beckwith established new dispositive deadlines that "are not to be extended." (Doc. 168). In a written Order of June 7, 2016, the Court reiterated that the written discovery deadline of March 4, 2016 had "long since passed" and would not be further extended beyond the resolution of several pending disputes concerning previously served requests. (Doc. 170). The Court overruled Plaintiff's various requests seeking advice on how to manage and

8

organize previously produced discovery, reiterating Plaintiff's responsibilities as a *pro se* litigant.  (*Id.*).  The Court extended time for the parties to complete oral depositions of fact witnesses, and also extended expert disclosure deadlines.  The Court reiterated that a failure to adhere to the latest schedule may result in the imposition of sanctions, "up to and including the dismissal of this lawsuit." (Doc. 170 at 4, PageID 1912).

On July 20, 2016, Judge Beckwith denied and overruled several additional motions and objections filed by Plaintiff.  Several pages of the July 20, 2016 Order are devoted to restating prior admonitions made to Plaintiff that this Court cannot provide her or any other *pro se* litigant with legal advice, and setting out a detailed record of "Plaintiff's unacceptable conduct."  Among the conduct criticized by the Court was Plaintiff's propensity "to make the same arguments on the same issues" in multiple motions, despite the Court's adverse rulings, which the Court termed "vexatious and an abuse of process."   (*Id.* at PageID 1944).  Many of the Court's rulings on Plaintiff's motions made reference to the Court's prior rulings on the same matters.

The July 2016 Order continued with this express warning to Plaintiff about filing repetitive motions, objections, and motions to reconsider the same rulings:

> This Court adheres to a two step process when considering the imposition of sanctions for litigant misconduct. First, the non-compliant litigant is advised that vexatious, abusive and disrespectful conduct will no longer be tolerated and that continued conduct of this nature will result in sanctions up to and including dismissal of the remaining claims with prejudice. *See* Case: 1:13-cv-00624-MRB-SKB Doc #: 175 Filed: 07/20/16 *Gueye v. U.C. Health, et al.*, 1:13-cv-00673, Doc. No.44, (Beckwith, S.D.Ohio, Sept. 2, 2014). Second, the non-compliant litigant is advised that if the conduct continues beyond that warning, then the Court will order a show cause hearing to give the litigant an opportunity to answer as to why the Court should not impose the sanctions it deems appropriate. *Id.*
>
> Ms. Andwan has been warned directly on many occasions that her conduct will not continue to be tolerated. She has not heeded these prior

9

> warnings…. <u>Plaintiff is further advised that if any subsequent pleadings or "objections" are reconfigurations of prior pleadings, reiterations of previously ruled upon issues, or Plaintiff's irrelevant personal commentary, said conduct will be deemed to be vexatious and frivolous with no basis in law. The next action from the Court in response to such conduct will be to order a show cause hearing for the Plaintiff to show cause as to why she should not be sanctioned.</u>

(Doc. 175 at 5-6, PageID 1945-1946, emphasis added).

On August 24, 2016, the undersigned directed the parties to proceed with scheduling Plaintiff's independent medical examination and deposition. Several scheduling (and rescheduling) accommodations were provided to Plaintiff regarding these events, including breaking her deposition into shorter segments of time over multiple days rather than a single day.

On September 20, 2016, Plaintiff filed a "motion to appoint competent co-counsel" to "assist Plaintiff throughout the remainder of this case." (Doc. 180). On September 29, 2016, the undersigned denied that motion, which was grounded in part on Plaintiff's assertions that she suffers from PTSD and an anxiety disorder, and is 69 years of age. Plaintiff also cited her alleged financial inability to spend additional money on attorney's fees, and the alleged reluctance of private attorneys she has consulted to accept representation. Notwithstanding the Court's prior instructions not to refile new motions concerning previously decided issues, Plaintiff's motion reiterated many prior arguments concerning the alleged misconduct of prior counsel, Plaintiff's continuing objections and arguments relating to Defendants' discovery responses, and the inadequacy of *pro se* litigation resources provided by this Court. In denying Plaintiff's motion seeking the appointment of counsel or "co-counsel," the undersigned wrote:

> As Plaintiff is well aware, civil litigants have no constitutional right to the appointment of counsel at government expense. *See Anderson v.*

10

> *Sheppard*, 856 F.2d 741 (6th Cir. 1988). The undersigned has considered all factors in this case, including the fact that Plaintiff previously retained counsel on two separate occasions prior to their withdrawal based on irreconcilable differences, and the fact that Plaintiff has been acting in a *pro se* capacity for most of the time in which this case has been pending. During the time in which Plaintiff has proceeded *pro se*, she has filed dozens of motions and other documents in this Court, and represented herself in numerous in person and telephonic status conferences.
>
> The Court agrees that Plaintiff would benefit from the representation of counsel - a statement that the undersigned could make about virtually every *pro se* litigant. However, the benefit to Plaintiff or even to this Court does not justify the appointment of counsel in a case where - notwithstanding errors or missteps along the way - Plaintiff has successfully represented herself for more than two years. Even if the Court found exceptional circumstances, which do not exist in this case, the Court has no authority to appoint counsel to serve as "co-counsel" with a *pro se* litigant. To reiterate, no "exceptional circumstances" exist that would justify the rare appointment of free counsel or co-counsel to Plaintiff herein. *Lavada v. Keohane*, 992 F.2d 601 , 605-606 (6th Cir. 1993).

(Doc. 183). Consistent with anticipatory concerns expressed by the undersigned in the September 29, 2016 Order, Plaintiff promptly filed a "motion to stay" her deposition as well as other proceedings, until the Court appointed her counsel. On November 15, 2016, the undersigned denied Plaintiff's motion to stay all proceedings in order to allow "newly assigned co-counsel" to participate, reiterating that no counsel would be appointed. (Doc. 186).

Plaintiff filed objections to the denial of counsel. Judge Beckwith overruled those objections, finding no "exceptional circumstances" to justify the appointment of counsel. (Doc. 187). In addition, Judge Beckwith's Order states: "Plaintiff is advised to move this case forward, adhere to the deposition and IME dates and discovery deadlines as established by the magistrate judge previously. <u>Plaintiff is further advised to review Doc. No. 175, wherein this Court advised Plaintiff that further unsupported delays will not be</u>

11

<u>tolerated and could result in a show cause order in accordance with Fed. R. Civ. P. 11(c)(1)</u>." (Doc. 187, Order of 11/22/16 at 2, emphasis added).

Plaintiff filed a "motion for reconsideration" of Judge Beckwith's November 22, 2016 Order "and [for] leniency," (Doc. 189), in which she reiterated her request for the appointment of "co-counsel" and sought an additional continuance to conduct further discovery. As grounds for reconsideration, Plaintiff renewed her criticisms of her prior attorney, of this Court, and of Defendants and their attorneys. Plaintiff also questioned whether the Court was unfairly treating her based upon Plaintiff's asserted "PTSD disability." Judge Beckwith's December 7, 2016 Order is clear in denial of the motion to reconsider:

> Plaintiff's Motion does not reveal any circumstances that are extraordinary, exceptional, or any different from previous similar motions. Therefore, for all the reasons set forth in the previous orders of this Court, including those of the Magistrate Judge, which have detailed the obligations of the Court to *pro se* litigants and which have advised Plaintiff that further delays and requests for continuances will not be tolerated, the Court finds that Plaintiff's Motion is not well taken.

(Doc. 190).

This case was reassigned to U.S. District Judge Barrett on January 3, 2017. Perhaps in the mistaken belief that the reassignment of her case to a new trial judge may result in different rulings,[3] Plaintiff filed a "second motion for reconsideration" of her motion to appoint counsel (and prior Orders denying said motion), as well as for reconsideration of the denial of her motion to stay (and objections thereto), and – last but not least – reconsideration of the denial of her first order for reconsideration. (Doc. 193, seeking reconsideration of Docs 180, 185, 186, 189, 190).

---

[3]In general, the doctrine of the "law of the case," means that earlier rulings made in the same case continue to apply, whether or not those rulings were made by a previously assigned judicial officer.

12

**II. Analysis of Second Motion for Reconsideration of Prior Rulings**

As grounds for this latest "motion for reconsideration" of issues previously decided by this Court, Plaintiff cites her advanced age (now 70), her high legal expenses to date, and her psychiatric diagnoses of PTSD and persistent depressive disorder. Plaintiff asserts that her treating physicians have "expressed concern that the Court [has] forced Plaintiff, despite medical impairments, to proceed without counsel." (Doc. 193 at 1).

Plaintiff additionally argues that "exceptional circumstances" exist because she suffers from "diminished abnormal eyesight" and high cholesterol. (*Id.*) Once again, she blames this Court for delays, and criticizes the Court with some of the same language for which she was previously admonished. (*See, e.g.* Doc. 175; compare Doc. 193 at 2-3). She recites as additional "exceptional circumstances" a few allegations in her second amended complaint (as well as some allegations from a first amended complaint that is no longer at issue in this litigation).

Plaintiff asserts that defense counsel "have indicated on the record ... that they will not object to assignment of counsel and/or a stay for Plaintiff to conduct depositions and prepare new counsel to proceed professionally" and that counsel agreed to so notify this Court. (Doc. 193 at 2; PageID 2201). Judge Beckwith previously considered the same representation when she denied Plaintiff's December 2, 2016 motion for reconsideration.[4]

---

[4] Defense counsel has filed nothing to date indicating Defendants' agreement to extend discovery to allow new counsel to prepare and take depositions on Plaintiff's behalf. However, the Defendants' agreement or disagreement would not alter the undersigned's conclusion that the appointment of counsel by this Court is not warranted, and that no additional stays of existing deadlines should be granted.

13

Attached to Plaintiff's second motion for reconsideration is a December 9, 2016 letter from Dr. Patrick Swanson to Judge Beckwith, stating Plaintiff's psychiatric diagnoses and expressing a medical opinion "that Ms. Andwan's psychiatric symptoms are of such a severity that she is unable to execute the research, arrangement of documents, and other actions required to represent herself in this current legal matter." (Doc. 193-1,193-2). Plaintiff also has attached unverified 2012 medical records that appear to support her claims of high cholesterol (in 2012) and vision complaints (resulting in an initial prescription for bifocals in 2012, and a similar prescription in 2013) (Doc. 193-3).

The undersigned has no cause to doubt Plaintiff's psychiatric or physical health complaints. The Court also has no reason to doubt Dr. Swanson's professional opinion concerning the barriers to Plaintiff's ability to represent herself in this matter given her mental illness; the same issues have resulted in lenient extensions by this Court and other accommodations, including permitting Plaintiff to be deposed over multiple days, and to bring a "lay companion" to accompany her to a pretrial conference. The Court has previously encouraged Plaintiff to retain new counsel if she is able, and in denying Plaintiff's motion in September 2016, the undersigned acknowledged "that Plaintiff would benefit from the representation of counsel - a statement that the undersigned could make about virtually every *pro se* litigant." However, nothing previously presented by Plaintiff and nothing presented in her latest procedurally improper and repetitive second motion for reconsideration demonstrates the type of truly extraordinary circumstances that would support the appointment of counsel in this case by this Court.

14

That said, the undersigned will make one final attempt to explain to Plaintiff why her request is being denied.

Plaintiff is a civil litigant who willingly chose to initiate this litigation against the Defendants. As this Court has <u>repeatedly</u> explained to Plaintiff, civil litigants have no constitutional right to the appointment of counsel at government expense. *See Anderson v. Sheppard*, 856 F.2d 741 (6th Cir. 1988). The appointment of counsel for civil litigants requires "exceptional" circumstances beyond relatively routine circumstances such as illiteracy, poverty, lack of legal knowledge, or illness. Unfortunately, the Court's civil case docket contains very large numbers of civil cases filed by plaintiffs proceeding *pro se* who seek the Court's appointment of counsel. While many of these cases are initiated by prisoners, others are filed by individuals who, like Plaintiff in this case, suffer from a variety of serious mental or physical illnesses.

One of the many reasons that this Court cannot appoint counsel to the vast majority of *pro se* litigants who seek such appointments is that the Court does not have either funds from which counsel can be compensated, or a ready list of attorneys who are eager to take on such cases without compensation. Congress has provided limited funding for the appointment of defense counsel only in criminal cases, in which the right to counsel is secured by the Sixth Amendment of the United States Constitution. No similar right to counsel exists for an individual who voluntarily initiates a civil suit for money damages, no matter how meritorious a plaintiff may believe his or her claim to be. A small number of federal statutes, including those relating to the representation of social security claimants and some civil rights laws, provide for compensation of attorney's fees in civil cases – typically, at the conclusion of a case <u>if</u> a plaintiff's

15

attorney has prevailed on the merits. Such attorney's fee awards in civil rights cases are paid by the Defendant(s). However, such cases are an exception to the American rule that each side in litigation must bear his or her own litigation costs.

Plaintiff's latest motion states: "Plaintiff is not seeking free representation." (Doc. 193 at 1). The fact that Plaintiff does not proceed as a pauper in this case only adds to the reasons why the appointment of counsel is not appropriate in this case. Plaintiff has previously retained counsel on two separate occasions prior to their withdrawal and/or termination by Plaintiff. Despite her current allegations of limited financial resources, she not only retained counsel in the past but paid the full filing fee both in this Court and for an interlocutory appeal to the Sixth Circuit. To the extent she claims indigency, Plaintiff remains free to seek assistance through traditional agencies that serve the indigent, including Legal Aid or Volunteer Lawyers for the Poor. Aside from those types of services, many private attorneys will accept representation based upon contingency fee agreements. Plaintiff's poor prior history with retained counsel and apparent continued lack of success in retaining new counsel calls into question the likelihood of any future successful attorney-client relationship,[5] but this Court has not and will not stand in the way of her continuing attempts to secure counsel on her own.

Contrary to Plaintiff's apparent representation to her doctors, this Court has never "forced" any *pro se* plaintiff to continue to prosecute her case if he or she no longer wishes to do so. Likewise, this Court has never prevented Plaintiff from continuing to seek new counsel (independently of this Court) to represent her. The only

---

[5]Given that more than 30 attorneys had turned down Plaintiff's requests for representation in March 2014 (Doc. 18 at 3), the reports of prior counsel in their respective motions to withdraw, and the late stage of litigation on this date, it frankly would be difficult to conceive of any counsel that this Court could appoint, even if the Court were so inclined (which it is not).

limitation that this Court has ever placed upon Plaintiff is one of time. The Court was more than generous in initially granting Plaintiff extensions of deadlines to seek new counsel, but justice could not withstand endless extensions. As the above history reflects, the Court nevertheless granted Plaintiff additional extensions to accommodate a variety of her concerns, including but not limited to her psychiatric treatment.

Plaintiff is not wholly incompetent. She has successfully filed *pro se* more than 60 motions, objections, and other documents of record. Despite numerous procedural irregularities and missteps, Plaintiff's *pro se* motions have been granted by this Court (at least in part) on at least ten occasions. (*See* Docs. 21, 24, 63, 67, 68, 99, 133, 145, and Notational orders of 11/3/14 and 10/1/15). The result of the many extensions granted in this case is that, as of this date, this case has been pending for more than three years – an excessively long time in comparison to similar cases.

The Court has been extremely lenient and liberal with Plaintiff despite her continued disrespectful conduct toward this Court and opposing counsel, and despite her continual filing of "new and improved" versions of repetitive arguments and motions, including the instant second motion for reconsideration. (*See* Doc. 175). Plaintiff was repeatedly warned by Judge Beckwith that her propensity to continue filing such repetitive motions is vexatious and amounts to an abuse of process. The undersigned agrees, having expended an inordinate amount of time upon many of these repetitive motions.

The instant "second motion for reconsideration" is a case in point, and easily would support the issuance of a "show cause" order and/or the imposition of sanctions. The Court declines to enter such an order based upon the historic leniency of this Court

toward *pro se* litigants in general and Ms. Andwan in particular, in combination with the particular nature of the pending motion, the recent transfer of this case to a new presiding district court judge, and the additional evidence attached by Ms. Andwan to the motion (Dr. Swanson's letter). Should Plaintiff persist and file any additional motions seeking reconsideration of the same issues, however, the undersigned will feel no compulsion for future leniency.

### III. Conclusion and Order

For all the reasons stated herein and in the Court's prior orders regarding the same issue, **IT IS ORDERED THAT:**

1. Plaintiff's second motion for reconsideration of the Court's prior orders denying her the appointment of counsel and/or additional stays of this litigation (Doc. 193) is DENIED;

2. A courtesy copy of this Order shall be transmitted to Dr. Patrick Swanson at Talbert House, 5837 Hamilton Ave., Cincinnati, OH 45224.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge